## In re MOODY.

(District Court, N. D. Iowa, E. D.   August 15, 1904.)

### No. 394.

1. BANKRUPTCY—JURISDICTION OF COURT—PROPERTY IN POSSESSION OF ADVERSE CLAIMANT.

A court of bankruptcy has jurisdiction under Bankr. Act July 1, 1898, c. 541, § 2, cl. 3, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], to take possession by its marshal or receiver of property in the possession of an adverse claimant, but which is charged in a petition in bankruptcy to have been fraudulently transferred by the alleged bankrupt, where the court finds such action necessary to the preservation of the estate, and, having taken such possession, it has jurisdiction, on reasonable notice to the claimant, to determine the right of ownership, which in such case is one arising in a proceeding in bankruptcy, as distinguished from a controversy at law or in equity, within the meaning of section 23, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431].

In Bankruptcy.   On motion of petitioning creditors for temporary injunction against the Hawkeye Land Company and Myrtle Moody, and motion of said land company for release of property in the custody of the receiver.

May 24, 1904, Charles Kaufman & Bros. and others filed a creditors' petition in bankruptcy against Edward J. Moody, of Hawkeye, Fayette county, alleging that said Moody had committed acts of bankruptcy, for that he had on May 14, 1904, while insolvent, transferred to the Hawkeye Land Company, of said Fayette county, a large part of his personal property, to wit, a stock of merchandise of the value of $7,000, with intent to hinder, delay, and defraud his creditors, and that on the same day, while insolvent, he transferred to his wife, Myrtle Moody, property of the value of more than $5,000, with intent to hinder, delay, and defraud his creditors, and to give her, as one of his creditors, a preference over the others; and they asked that he be adjudged a bankrupt. May 25, 1904, said Charles Kaufman & Bros. filed an ancillary petition in said proceedings, in which they alleged the filing of said creditors' petition, and, further, that on May 14, 1904, said Edward J. Moody, with intent to hinder, delay, and defraud his creditors, without consideration, and while insolvent, attempted to convey to the Hawkeye Land Company, of Fayette county, a large part of his property, consisting of his entire stock of merchandise, all located in his store at Hawkeye, but that after said alleged transfer said Edward J. Moody remained in the open and visible possession of said property, in the same manner that he had been before; that he is now in possession thereof, where he had been and is now doing business; that he is neglecting the business aforesaid, to the great loss of the petitioner and creditors of like class; that it is for the best interest of said estate that some responsible person be appointed to take charge of the property and assets of said Moody until the hearing of the petition, and continue the business of said bankrupt. An injunction against the Hawkeye Land Company is asked, restraining it from transferring or in any manner disposing of or interfering with said stock of goods; also that a receiver be appointed to take possession of the property and assets of said Edward J. Moody pending the hearing of the petition. A certificate of the clerk of this court, stating that the judge was absent from the division of the district in which such petitions were filed, was presented to and filed with the referee in bankruptcy for Fayette county May 26, 1904, together with said ancillary petition, and on that date said referee made an order appointing a receiver to take possession of said stock of goods, which order commanded the receiver to take charge of and hold said estate (being the stock of goods referred to herein), and to continue the business of said bankrupt at Hawkeye until the further order of the court. The receiver duly qualified, took possession of said stock of merchandise on May 26th pursuant to said order,

and has since continued the business of the bankrupt thereunder, and has sold a part of said goods. June 4th an injunction was also asked against Myrtle Moody, wife of Edward J. Moody, restraining her from removing or disposing of the property alleged to have been transferred to her by said Edward J. Moody. Notice of the applications for these injunctions was given to the Hawkeye Land Company and Myrtle Moody, and a time fixed for the hearings thereon, and a temporary restraining order was issued against each, as prayed, pending such hearings. The Hawkeye Land Company has appeared and filed affidavits in opposition to the issuance of an injunction against it, and has also filed a motion to vacate the restraining order, and that the stock of merchandise so taken possession of by the receiver be turned over to it.

Lacy & Brown and Hugh J. Kearns, for petitioning creditors.
Hurd, Lenehan & Kiesel, for Hawkeye Land Co.

REED, District Judge (after stating the facts). The Hawkeye Land Company claims to be a good-faith purchaser of this stock of merchandise from Edward J. Moody, that it was in actual possession thereof as such prior to the filing of the petition in bankruptcy, and that the court of bankruptcy therefore had no jurisdiction to summarily take possession of such property from it. The affidavits filed by the land company tend to show that on May 14, 1904, it purchased this stock of merchandise in good faith from the alleged bankrupt, without notice of his insolvency, paid therefor $400 in cash, paid a note of Moody's to the First State Bank of Hawkeye for $400, gave its own note for $1,000 and a quarter section of land in Fayette county, took actual possession of said goods on that day, and a written bill of sale of the same, which it duly recorded, and was in the open and exclusive possession of said property at the time the receiver was appointed; that Moody was employed by it as a clerk after it purchased the stock of goods, and that he was acting in that capacity only when the receiver was appointed; that the petitioning creditors and the receiver all knew of such purchase by and possession of the land company when the receiver was appointed, but he took the same from its custody, against its protest, and without its consent.

The examination by the petitioning creditors of some of the affiants whose affidavits were so presented by the land company tends to show that the land so conveyed by that company in part payment for the stock of goods was subject to a mortgage for $6,000, and was deeded to Myrtle Moody, wife of Edward J. Moody; that the $1,000 note was made payable to her, or delivered to her at the time of the transaction; that one of the members of the land company is an officer of the First State Bank of Hawkeye; that Moody remained in the store after the sale of the goods to the land company, carried the keys thereto, and continued to sell the goods as he had been selling them before said sale; that he was to have a percentage of the daily sales of goods for his salary, and that the proceeds of such sales above this were to be applied upon the note for $1,000 which the land company gave as part payment for the stock of merchandise; and the petitioning creditors claim that the transaction between Moody and the land company was intended by both of said parties as a fraud upon the creditors of Moody, and that the land company is not, therefore, a good-faith purchaser of said property. Counsel for the land company cite and rely upon In

re Rockwood (D. C.) 91 Fed. 363; Bernheimer v. Bryan, 93 Fed. 767, 35 C. C. A. 592; Beach v. Macon Grocery Co., 116 Fed. 143, 53 C. C. A. 463, and other similar cases. In the first of these it was ruled by Judge Shiras that the marshal or a receiver should not be appointed, under section 69 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3450], to take possession of property from a third person who was in actual possession thereof under claim of right prior to the institution of bankruptcy proceedings. In general, the rule so announced should be followed, and should be observed by referees acting under authority of section 38 (3), 30 Stat. 555 [U. S. Comp. St. 1901, p. 3435], in appointing receivers. In Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, in speaking of the powers conferred upon courts of bankruptcy by sections 2 (3) and 69 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 545, 565 [U. S. Comp. St. 1901, pp. 3421, 3450], it is said, "These provisions can hardly be considered as authorizing the forcible seizure of such property in the possession of an adverse claimant." These rulings, however, were made prior to the decision of the Supreme Court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814, hereinafter referred to, and they must yield to that decision; and whether or not the marshal or a receiver should be directed to take possession of property in the hands of third parties will depend upon the circumstances of the particular case. Bernheimer v. Bryan and Beach v. Macon Grocery Company are authority for the contention of the land company that, if it was in fact in possession of the property at the time the receiver took possession thereof, the court of bankruptcy would be without jurisdiction to summarily take the property from it, and it should be returned to the land company, and the right to the property determined in an action therefor by the trustee in the event that Moody should be adjudged bankrupt. But these decisions upon this point are overruled by the Supreme Court in Bryan v. Bernheimer, 181 U. S. 188, 21 Sup. Ct. 557, 45 L. Ed. 814. In this case the Supreme Court held that a court of bankruptcy has authority under section 2 (3) of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], after the adjudication of bankruptcy, to order the marshal or receiver to take possession of the property of the bankrupt from a third party who acquired such possession and the alleged right thereto from the bankrupt, or one holding his title and right only, after the filing of the petition, and before the adjudication of bankruptcy. It is contended by the land company that this should only be done after the adjudication, for until that time it cannot be known that the court of bankruptcy will have authority to make distribution of the property. In Re Rochford, 124 Fed. 182 (C. C. A., Eighth Circuit), the property appears to have been in the possession of one who claimed to own and to have acquired it from the bankrupt a month before the petition in bankruptcy was filed; and it is there held that the bankruptcy court had authority to order the receiver to take possession thereof after the filing of such petition, and before the adjudication. Davis v. Bohle, 92 Fed. 325, 34 C. C. A. 372 (Eighth Circuit), is to the same effect.

Section 2 of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], provides that courts of bankruptcy are invested with jurisdiction to "* * * (3) appoint receivers or marshals upon the application of parties in interest * * * to take charge of the property of bankrupts after the filing of the petition and until it is dismissed or the trustee is qualified. * * *" It is the filing of the petition, therefore, and not the adjudication, that authorizes this action by the court of bankruptcy. Such filing is the commencement of the proceedings, and in effect is an attachment or sequestration from that time of all the property of the bankrupt not exempt to him for the benefit of his creditors. Bank v. Sherman, 101 U. S. 403, 25 L. Ed. 866; Mueller v. Nugent, 184 U. S. 14, 22 Sup. Ct. 269, 46 L. Ed. 405. The court from that time may draw to its actual custody the property of the bankrupt within its territorial jurisdiction. If an adjudication follows, such property will be distributed by the court. If it does not, it will be restored to the bankrupt, or the person from whose custody it was taken. In most of these cases the distinction is observed between proceedings in bankruptcy, as such, and controversies at law or in equity under section 23, Act July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431]. But in Bryan v. Bernheimer the Supreme Court is careful to state that the powers of the bankruptcy court under section 2, cl. 3, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421], are not limited by section 23, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431], and that what is said in Bardes v. Bank that might be so construed was inadvertently said upon a question not arising in that case. This question is carefully considered by the Court of Appeals in Re Rochford, above, and the distinction between proceedings in bankruptcy, as such, and a controversy at law or in equity, within the meaning of section 23, is clearly pointed out, and the rules deducible from the decisions of the Supreme Court in Bryan v. Bernheimer and Bardes v. Bank are summarized by Sanborn, Circuit Judge, as follows:

"(1) The District Court, sitting in bankruptcy, has no jurisdiction over a controversy between trustees in bankruptcy and an adverse claimant over the title or possession of property in the custody of the latter in the absence of his consent. But such an issue is a controversy at law or in equity, as distinguished from a proceeding in bankruptcy, within the meaning of section 23 of the bankrupt act of July 1, 1898, c. 541, 30 Stat. 552 [U. S. Comp. St. 1901, p. 3431].

"(2) The District Court, sitting in bankruptcy, has jurisdiction of such a controversy in cases in which it finds it absolutely necessary for the preservation of the estate to take possession of the property from the adverse claimant by means of its receiver or the marshal, under clause 3 of section 2, 30 Stat. 545 [U. S. Comp. St. 1901, p. 3421]; and such a seizure, and the subsequent determination of the issue thus raised between the trustee and the adverse claimant, is a proceeding in bankruptcy, as distinguished from a controversy at law or in equity, within the true construction of section 23.

"(3) The District Court, sitting in bankruptcy, has jurisdiction to determine, after reasonable notice to the claimants to present their claims to it, the claims of all parties to property, and to the proceeds of property, which its officers have lawfully reduced to their actual possession in the course of the administration of the estate of the bankrupt; and controversies between trustees in bankruptcy and adverse claimants to property which has in this way reached the custody of the District Court are not controversies at law or in equity, as

distinguished from proceedings in bankruptcy, within the proper interpretation of section 23."

This was prior to the amendment of February 5, 1903, c. 487, 32 Stat. 797 [U. S. Comp. St. Supp. 1903, p. 409]. That amendment in no way restricts the power of the court under section 2 (3), but does enlarge the jurisdictions in which suits or actions by the trustee against third parties may be brought.

The conclusion, therefore, is that the bankruptcy court had jurisdiction to summarily take possession of this stock of merchandise from the Hawkeye Land Company, under clause 3 of section 2 of the bankruptcy act, in case it was necessary to do so to preserve it to the estate of the bankrupt; that the allegations of the ancillary petition, in effect, are that such property in fact belonged to Edward J. Moody, and are sufficient upon which to base a finding that it was necessary for the court to take possession of it in order to preserve it to his estate in bankruptcy in case he was such owner, and should be adjudged bankrupt; that the order appointing the receiver, and directing him to take possession of such property, is, in effect, a finding that it was necessary to do so. The result is that by that finding and order, and the action of the receiver thereunder, the court of bankruptcy has reduced this property to its actual custody. This, however, does not determine the actual ownership of the same.

Since this matter was submitted, Edward J. Moody has been adjudged a bankrupt, and the matter has been referred generally to the referee for Fayette county, and a trustee has been, or in due time will be, appointed. The right of the land company to the property or its proceeds depends upon whether or not it is a bona fide purchaser of it from the bankrupt prior to the filing of the petition in bankruptcy. The petitioning creditors contend that it is not. This is a question which the parties have the right to contest. It can only be done, however, in a proceeding where the evidence upon both sides can be taken in the usual way. In Bardes v. Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, above, it is said that proceedings in bankruptcy for the distribution of property in the custody of the bankruptcy court are in the nature of proceedings in equity. They are therefore a branch of equity jurisdiction. It is a familiar principle of equity jurisprudence that property in the custody of a court of equity is always held by it in trust for those to whom it rightly belongs; and the jurisdiction to inquire into and determine to whom it so belongs, and to that end to require all claimants thereto to present their claims within a stated time, or be barred of any interest in or right to the property, is inherent in every court of equity. In re Rochford (C. C. A.) 124 Fed. 187, above. And this though the property may have been wrongfully seized, and so brought into the custody of the court. Krippendorf v. Hyde, 110 U. S. 276, 4 Sup. Ct. 27, 28 L. Ed. 145. See, also, Freeman v. Howe, 24 How. 450, 16 L. Ed. 749, and Buck v. Colbath, 3 Wall. 334, 18 L. Ed. 257. Bryan v. Bernheimer and In re Rochford, above, establish the rule by which the right to this stock of merchandise or its proceeds so in the custody of the court may be fully determined; and that is to require the land company to propound its claims to such property to the bankruptcy court within a stated time. The motion of the Hawk-

eye Land Company for the release of the property will therefore be overruled, and it will be required to propound its claim to this property before the referee by September 1, 1904. The referee will so notify it at least 10 days before such date,, and, if it fails to do so within such time, it will be barred of all right to or interest in said property. If it shall so propound its claim, the referee will then fix the time within which the trustee, as soon as appointed, shall plead thereto, and will make all requisite and necessary orders for speeding the matter to a final hearing, and determine the questions so presented. Upon the appointment of the trustee, the receiver will turn over to him all property seized under the order of his appointment, or the proceeds of such as he may have sold, and render to the referee a full and true account of all thereof. The referee will fix the amount of the receiver's compensation. The trustee, however, will not be entitled to the property or the proceeds thereof paid by the Hawkeye Land Company as consideration for the stock of merchandise, and such merchandise also. He must either affirm or disaffirm as a whole the transaction between the Hawkeye Land Company and Edward J. Moody, and, if it be finally adjudged that the trustee is entitled to the stock of merchandise, the consideration paid by the Hawkeye Land Company therefor, if received or recovered by him, must be returned to it. It is not necessary that an injunction should issue against the land company, as the stock of merchandise is now in the actual custody of the bankruptcy court, through its receiver; and any interference with it, or any attempt to do so, while in his possession or that of the trustee, would be an interference with and obstruction of the exercise of the jurisdiction of that court, and there is no reason to apprehend that this will be done.

Mrs. Myrtle Moody has not appeared in response to the notice to show cause why an injunction should not be granted against her. An injunction will therefore be issued against her as prayed, upon the petitioning creditors filing a bond in the sum of $1,000, with sureties to be approved by the clerk of this court.

It is ordered accordingly.