In re BACON.

(District Court, W. D. NEW YORK. June 3, 1912.)

No. 1,782.

BANKRUPTCY (§ 224*)—JURISDICTION OF REFEREE—ADVERSE CLAIMS TO PROPERTY.

Where a bank in good faith asserted an adverse claim to stocks pledged to it by a bankrupt, subject to a prior pledge to another bank which had actual possession of the stocks, a referee was without jurisdiction to determine its right to them in a summary proceeding over its objection filed when it appeared; nor did it waive such objection by pleading to the merits at the same time, and the good faith of the bank's claim is sufficiently established to defeat the jurisdiction in such proceeding by a decree of a state court establishing its lien in a suit between it and the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 383; Dec. Dig. § 224.*]

In the matter of Francis Bacon, bankrupt. On review of order of referee. Reversed.

Bacon & Huff, of Waterloo, N. Y. (W. S. O'Brien, of Geneva, N. Y., of counsel), for petitioner.

Charles E. Opdyke, of Waterloo, N. Y., for bankrupt.

George E. Zartman, of Waterloo, N. Y., in pro. per.

HAZEL, District Judge. This proceeding comes here upon the petition of the First National Bank of Waterloo to review the decision of the referee in bankruptcy, contending inter alia that the referee had no jurisdiction in the matter. The material facts are as follows:

The bankrupt, Bacon, before his adjudication on May 4, 1904, pledged to the Exchange National Bank of Seneca Falls, N. Y., certain stocks as collateral security, and afterwards pledged the identical stocks to the First National Bank of Waterloo, N. Y., as collateral security subject to the rights of the prior pledgee which, since the stock was pledged, has had the physical possession thereof. The agreements pledging the stocks were dated, respectively, February 20, 1899, and February 15, 1902. On August 22, 1910, the trustee in bankruptcy petitioned the referee for an order requiring the pledgees to show cause why they should not prove their liens, and why the trustee should not pay to them the respective amounts due, and redeem such stocks and securities pursuant to General Orders in Bankruptcy No. 28. On the return day of the order to show cause, the Waterloo Bank and the Seneca Falls Bank appeared; the latter filing an unsecured claim for $7,327.98 and waiving its lien against the said stocks in its possession. Prior thereto on May 2, 1905, the Waterloo Bank filed, with the referee, a claim against the estate in bankruptcy for $4,010 on a promissory note, to the allowance of which objection was made by the trustee. Afterwards the said claim was withdrawn by claimants, and the same was expunged from the list of claims previously filed against the bankrupt estate.

The trustee in bankruptcy contended before the referee, in 1905 when the bank sought to enforce payment of the debt out of the stocks. that the pledge or transfer by Bacon of the securities to the Waterloo Bank was invalid, and thereupon an action was brought by the Waterloo Bank to reform the instrument, and later a decree was entered deciding that the bank held and owned such stocks and securities as collateral security for any indebtedness from Bacon existing on or prior to February 15, 1902.

On the return day of the heretofore mentioned order to show cause, the Waterloo Bank challenged the jurisdiction of the court, claimed that it had title to the stocks, and asserted its right to have the controversy determined in a plenary action. The answer to the jurisdiction also contained a plea to the merits. The referee substantially held that as the Waterloo Bank never had possession of the stocks, and as it had pleaded to the merits, the objection of want of jurisdiction was waived. The Waterloo Bank, again before the hearing on June 3, 1911, renewed its objection to the jurisdiction of the court claiming ownership of the stock adversely to the trustee in bankruptcy, and upon the overruling of such objection filed a statement of its claims against the bankrupt, but in so doing disclaimed any intention of submitting to the referee for determination the controversy arising on the facts. The statement on its face showed an aggregate indebtedness from Bacon to the bank of $17,836.20. Subsequently the referee decided, on evidence susceptible of different inferences, that the Waterloo Bank was not an adverse claimant in good faith, and that the lien against said stocks pledged to it by Bacon amounted to only $390.58 with interest. He disallowed the claims on the promissory note above specified, on various other notes of lesser amounts, and on 15 bonds of the Waterloo Organ Company, upon which Bacon was claimed to be liable.

Had the referee jurisdiction? Prior to the amendment of 1910, no suit could be maintained by a trustee in bankruptcy under section 70, subd. "e" of the Bankruptcy Act (Act July 1, 1898, c. 541, 30 Stat. 566 [U. S. Comp. St. 1901, p. 3451]), without the consent of the opposed defendant if the claim asserted was adverse. Concededly the right of the trustee to proceed herein was under section 70, subd. "e" as read in connection with section 23, subd. "b" and therefore I think the question of jurisdiction depended entirely upon whether an adverse claim in good faith was made. If the claim is found to have been adverse, the proceeding was not strictly one in bankruptcy —as, for example, a proceeding to prove the amount due from the bankrupt to the bank—but seems to have been a controversy which arose in bankruptcy asserting a right of ownership in the stocks, and of such a proceeding the referee had not the jurisdictional right to make a summary disposal requiring the transfer of the stocks to the trustee unless the adverse claim was colorable or fictitious. Matter of Friedman, 20 Am. Bankr. Rep. 37, 161 Fed. 260, 88 C. C. A. 306. That the securities were actually in the possession of the Seneca Falls Bank—the first pledgee—is not thought of material importance in view of the fact that the right of the Waterloo Bank to such pos-

session was subject thereto. In my opinion, it is reasonably clear from the evidence that an adverse claim existed. Indeed, the referee decided on disputed testimony that the Waterloo Bank held a valid lien on the stocks in an amount less than the aggregate amount claimed to be due and owing. The litigations pending between the trustee in bankruptcy and the Waterloo Bank ever since the appointment of the former, in which such stocks have prominently figured, abundantly prove that the latter had rights of possession to the securities for the indebtedness or liability of any kind of Bacon or of the Waterloo Wagon Company, Limited. The rights of the trustee who never actually had possession of the stocks were subordinate to those of the bank.

In First National Bank of Waterloo v. Bacon, 113 App. Div. 612, 98 N. Y. Supp. 717, an action between this petitioner and the bankrupt in this proceeding, Justice Williams of the Appellate Division, Fourth Department, who wrote the opinion in the case involving a reformation of the agreement, said:

"Even if delivery of the scrip to the Seneca Falls bank and the possession thereof by it could be regarded as possession in that bank of the stock, still when the stock was subsequently pledged to the plaintiff, subject to the lien of the Seneca Falls Bank, the possession by the first pledgee might be regarded as the possession of the second pledgee through the agency of the former."

The Court of Appeals of this state affirmed the Appellate Division (189 N. Y. 533, 82 N. E. 1126), and the Supreme Court of the United States, on writ of error, in all things approved the same (Zartman v. First National Bank of Waterloo, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418). Such decisions are entitled to consideration on the question of the right of the Waterloo Bank to possession of the stocks. The judgment determining the title to the stocks was offered in evidence by the claimant, but the referee excluded it. Such judgment, however, is thought to bear upon the bona fides of the claimant and upon the fictitiousness or substantiality of the claim asserted.

Under the circumstances presented, a summary proceeding before the referee in bankruptcy to require the release of the securities, or proof of the amount of the liens secured by them, does not take the place of a plenary action. In re Rochford, 10 Am. Bankr. Rep. 608, 124 Fed. 182, 59 C. C. A. 388; In re Knickerbocker (D. C.) 10 Am. Bankr. Rep. 381, 121 Fed. 1004; In re Scherber (D. C.) 12 Am. Bankr. Rep. 616, 131 Fed. 121. The referee cited various authorities, which have been examined by me, to show a waiver of the jurisdictional questions; but such authorities are not thought apposite. In each of the cases cited, the objection of want of jurisdiction interposed with a plea to the merits was in a plenary action, and not in a bankruptcy proceeding. Louisville Trust Co. v. Comingor, 184 U. S. 18, 22 Sup. Ct. 293, 46 L. Ed. 413, would seem to cover the precise question presented. In that case Comingor, who was cited to show cause, moved to dismiss for want of jurisdiction, but, without waiving the question, tendered an answer which was not acted on by the referee,

nor was his answer filed. Later he was cited to show cause why he should not pay certain sums of money in his possession, to the receiver in bankruptcy. He answered, but the same was deemed insufficient, and later, before the district judge, he again questioned the jurisdiction of the bankruptcy court to make such orders, but the district court held that he had acquiesced in the procedure, and was therefore amenable to its jurisdiction. The Supreme Court of the United States, however, held that Comingor had not come into the bankruptcy court voluntarily, and his objection to the jurisdiction, at the outset, was properly preserved. Hence I think that the Waterloo Bank, while objecting to the jurisdiction of the referee, did not confer jurisdiction by pleading to the merits.

It is true that the referee sitting in bankruptcy had the power to ascertain whether there was any basis for the claim of title, or ownership, or right of possession to the stocks which was asserted by the answer. Such power or right to enter upon an inquiry as to the existence of an adverse claim is beyond question. Matter of Friedman, supra; Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405; In re Kane (D. C.) 12 Am. Bankr. Rep. 444, 131 Fed. 386; In re Michie (D. C.) 116 Fed. 749; In re Ironclad Mfg. Co. (C. C. A.) 27 Am. Bankr. Rep. 490, 191 Fed. 831. But, nevertheless, if the claim was an adverse one, and the property in controversy was not in the custody of the court, no jurisdiction was acquired by the referee. Loveland on Bankruptcy (4th Ed.) vol. 2, p. 1050.

The facts in Re Bacon, 20 Am. Bankr. Rep. 107, 159 Fed. 424, 86 C. C. A. 404, a decision by the Circuit Court of Appeals for this circuit in an earlier review in this bankruptcy proceeding, were clearly different than those here. In that case the referee directed the bankrupt to transfer the property or fund to his trustee; but, as the wife had asserted a claim thereto, he directed a special deposit thereof until her claim should be finally determined by the bankruptcy court or some other court of competent jurisdiction. Subsequently the referee required her to assert her claim to the fund, and she later answered, and testimony was taken. The Circuit Court of Appeals held that, as she had elected to go on with the examination, and as the trustee had actual possession of the fund, she could not be heard to question the jurisdiction, after a decision had been rendered to the effect that the title to the fund was rightly in the trustee.

The evidence taken by the referee relating to the indebtedness and liability of the bankrupt to the claimant can scarcely, in view of the history of the past transactions arising out of the pledge in question, be regarded as colorable or fictitious. It was not positively necessary that the bank should be the absolute owner of the securities in the possession of the Seneca Falls Bank. It was sufficient if the securities were pledged for a liability which remains unsatisfied. Jaquith v. Rowley, 188 U. S. 620, 23 Sup. Ct. 369, 47 L. Ed. 620.

With reference to the note for $4,010: The referee was of the opinion that it was not intended to be secured by the securities specified in the agreement or pledge, but any such determination must nec-

essarily depend upon the law and facts. The indorsement on the note to the bank to the effect that the bank "will not demand its payment until Mr. Bacon is prepared to meet it" .cannot be construed literally; its construction depending upon the intention of the parties at the time of delivery and upon other elements disclosing the actual relations of the parties. Smithers v. Junker (C. C.) 41 Fed. 101, 7 L. R. A. 264; Nunez v. Dantel, 19 Wall. 560, 22 L. Ed. 161.

The evidence of the bankrupt, though perhaps indefinite, unsatisfactory, and open to different inferences, is nevertheless to be considered upon the questions of whether the asserted adverse claim is bona fide. Its credibility, the weight that should be given it, and the relations of the parties towards each other, are properly matters that claimant had a right to have considered in a plenary action. Whether the Waterloo Organ Company bonds were within the intent of the agreement, and whether a demand was made upon Bacon, and whether the guarantors of liability on the bonds were released, are all questions depending upon the construction of the agreement of February 15, 1902, in connection with the testimony relating thereto.

Without deeming it necessary to further examine the evidence, it appears clearly enough, I think, that the several issues, presented by the statement of the alleged indebtedness to the Waterloo Bank and the answer of the trustee, relate to fact and law. They present questions of such importance and uncertainty, notwithstanding the very able and comprehensive opinion of the referee, that I have become satisfied they should not be determined without the petitioner's consent in a hearing in the bankruptcy court.

The decision of the referee is reversed, and the petition dismissed for want of jurisdiction.