### In re MITCHELL (two cases).

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

### Nos. 114-115.

1. **Bankruptcy ⟨⟩444—Petition to revise should be in name of party aggrieved.**
   The petition to revise an order of a bankruptcy court should be in the name of the party aggrieved by such order, though the attorney for petitioner may verify the petition on showing cause therefor.

2. **Bankruptcy ⟨⟩101—Court can prevent dissipation of property between involuntary petition and adjudication.**
   The estate of a bankrupt is in process of administration from the date of involuntary petition, the filing of which is a caveat and in effect an attachment, and the court has the plain duty to prevent the disappearance and appropriation of property, to which the trustee, when appointed, will or may be entitled, during the period intervening between the filing of the petition and the adjudication.

3. **Bankruptcy ⟨⟩116—Summary proceedings against third persons depend on whether claim merely colorable.**
   Summary proceedings by a court of bankruptcy against third persons depend on whether an adverse claim to property is more than merely colorable.

4. **Bankruptcy ⟨⟩104—Claimants not in good faith may be enjoined pending suit by trustee.**
   Where claims to property by third persons adverse to the receiver in bankruptcy are unwarranted or colorable only, such adverse claimants may be restrained by injunction from disposing of the property until a plenary suit can be instituted against them by the trustee.

5. **Bankruptcy ⟨⟩116—Court can require security of third party pending suit by trustee.**
   Where an alleged involuntary bankrupt had made payments to third persons, whose claims to retain them were colorable only, the bankruptcy court had power to make an order requiring such claimants to deposit in court the amounts so paid to them, or to give bond or to secure the repayment of such amounts pending a suit to recover those sums which might be instituted after the trustee was appointed.

Petitions to Revise Orders of the District Court of the United States for the Southern District of New York.

In the matter of Max Mitchell, alleged bankrupt. On separate petitions by David Haar, on behalf of Betty Gross and on behalf of Dorothy Birenberg, to revise orders of the District Court requiring funds which the alleged bankrupt had delivered to petitioners to be delivered to the clerk of the court, or secured by bond pending the institution of a suit by the trustee in bankruptcy after his appointment. Orders affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

There is no difference between these appeals, except as to names and amounts. The facts in the Gross case are as follows: An involuntary petition was filed against Mitchell April 25, 1921. A receiver was appointed, who conducted examinations (presumably under section 21a) into the acts, conduct, and property of the bankrupt. As a result thereof he filed a petition against Betty Gross, setting forth that on April 20, 1921, Mitchell had realized $2,500 in cash by the sale of certain merchandise, and immediately handed the same over to Betty Gross. It was further averred that said Betty Gross still held the said cash intact "separate and apart from other moneys" and that the money was so held "in secret trust for the bankrupt." The receiver therefore prayed for an order directing said Gross to surrender said money forthwith.

Betty Gross appeared and by answer (1) denied the jurisdiction of the court, and (2) averred that said $2,500 was handed to her as "repayment of a loan made by" her "to the bankrupt over a year ago." After hearing, an order was entered granting the receiver's motion "to the extent hereinafter indicated," viz.:

"Further ordered that, within ten days from the date of the service of a certified copy of this order upon the respondent, Betty Gross, the said respondent turn over to deposit with Alexander Gilchrist, Jr., clerk of this court, the sum of twenty-five hundred ($2,500) dollars, and that the said Alexander Gilchrist, Jr., as clerk aforesaid, hold said moneys to await the outcome of a plenary suit to be instituted by the trustee for the recovery from the said respondent Betty Gross of the sum of twenty-five hundred ($2,500) dollars claimed to have been paid to her by the bankrupt in fraud of creditors; and it is further ordered that in the alternative the said Betty Gross may file with the clerk of this court within ten days from the service of a certified copy of this order upon her of a good and sufficient bond, to be approved by a Judge of this court, conditioned upon her paying to the trustee in bankruptcy for the said bankrupt herein to be appointed, the said sum of twenty-five hundred ($2,500) dollars in the event that in said suit brought by the trustee for the recovery thereof judgment is rendered in favor of the said trustee; and it is further ordered that the trustee in bankruptcy herein commence said suit within fifteen days after his appointment and qualification as trustee; and it is further ordered, that in the event that said suit is not so started within the said 15 days, that this order be null and void, and that the sum of $2,500 so to be deposited with the clerk of the court be returned to the said Betty Gross, or, if she chooses the alternative, that the bond be canceled and the surety thereon discharged."

Thereupon this petition to revise was filed, based upon a record which contains nothing but the petition above referred to, the usual order to show cause, the answer above summarized, and the order complained of. None of the evidence is before us.

David Haar, of New York City, for petitioners.

Bondy & Schloss, of New York City (Eugene L. Bondy, of counsel), for receiver.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). The question before us is irregularly presented and almost academic.

[1] The petition to revise is in the name of, and signed and verified by, the attorney for Gross and Birenberg. While the forms and orders prescribed by the Supreme Court do not descend into the particulars of practice on petitions to revise, it is plain that such petition must be by the party aggrieved. In re Jemison, etc., Co., 112 Fed. 966, 50 C. C. A. 641. It would be a proper application of familiar local practice to allow the verification of a petition to revise by the attorney, he showing cause therefor in his affidavit; but there is no justification for the

attorney himself and in his own name seeking review, and the reason for this is that he is not the party aggrieved.

The question is academic, or nearly so, because in the absence of any evidence we are ignorant of the facts leading to the order complained of: consequently we can only answer the inquiry whether, under any circumstances, however aggravated by fraud, perjury, and covin, a person not the bankrupt, having possession of property derived from the bankrupt and asserting the right to keep it, can be required to give security therefor. We say "security," because the bringing of the money into court is under the order optional, and the deposit of property in court, there to await the result of a plenary suit, is but one, and a very ancient, method of giving bail to the action.

[2] In involuntary bankruptcies there necessarily intervenes a period, sometimes a long period, between petition filed and adjudication. During this interim it is the plain duty of the bankruptcy court to prevent the disappearance and appropriation of everything to which the trustee when appointed will or may be entitled. The fundamental basis or reason for this exercise of jurisdiction is that the estate of the bankrupt is in process of administration from the date of petition filed (Cameron v. United States, 231 U. S. 710, 34 Sup. Ct. 244, 58 L. Ed. 448), and such filing is a caveat and in effect an attachment (Mueller v. Nugent, 184 U. S. 1, 22 Sup. Ct. 269, 46 L. Ed. 405) ; and more specifically it is the purpose of the act to "hold the property of the bankrupt intact from the time of the filing of the petition, in order that it may be administered under the law" if adjudication follows (Acme, etc., Co. v. Beekman Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208).

The application of this principle is not easy where, before there can be any administration in bankruptcy of a particular piece of property, the question must somewhere be decided whether that property belongs to the bankrupt estate or not. No one doubts but that to maintain what may be the estate intact the court may, and daily does, employ the machinery of receiverships, injunctions, stay orders, summary proceedings, and even seizure under the sixty-ninth section of the act (Comp. St. § 9653). Beach v. Macon, etc., Co., 116 Fed. 143, 53 C. C. A. 463.

[3] Summary proceedings against third persons depend on the answer to the questions whether there be an "adverse claim," and whether the claim advanced is more than merely colorable. In re Friedman, 161 Fed. 260, 88 C. C. A. 306; In re Ironclad Co., 191 Fed. 831, 112 C. C. A. 345; In re Yorkville, etc., Co., 211 Fed. 619, 128 C. C. A. 570; In re Midtown, etc., Co., 243 Fed. 56, 155 C. C. A. 586. We may assume that these petitioners for revision asserted an adverse claim, but we must also assume that on the facts presented their claims seemed unwarranted, and they themselves unreliable, if not irresponsible.

[4] Under such circumstances, even adverse claimants are by familiar practice restrained by injunction until appropriate action—i. e., plenary suit—can be begun. Under the doctrine evidently accepted by the court below, such plenary suit must await the election of a trustee. Therefore the period of injunction is until the trustee qualifies, and has time to begin suit if he is so advised. Such injunctive relief may be and has been accompanied by demands for security, and this is no

more than the exercise of the ordinary equity powers of the court in aid of the bankruptcy proceeding. Remington, § 1905, citing cases, especially In re Blake (D. C.) 171 Fed. 298. See also Remington, § 359, and cases cited.

All this is no more than a recognition of equity's power to mold its remedies to suit the occasion. If it were settled law that a receiver or any body of creditors could maintain plenary actions for the same purposes that a trustee can sue, equity could without doubt enjoin the dissipation of a fund, and even appoint therefor a receiver pendente lite.

[5] Having no facts before us, we hold as a legal abstraction that to require security, pending suit by the trustee, from one alleged to have in possession a part of the bankrupt estate, and in respect of what was obtained from the bankrupt, is within the power of the bankruptcy court, and agree with the court below that such power is necessarily within the language of decision in Bryan v. Bernheimer, 181 U. S. 188, and especially pages 196, 197, 21 Sup. Ct. 557, 45 L. Ed. 814, which recognizes under some circumstances the right of actual seizure.

Orders affirmed, with costs.